UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILANDES WILLIAMS,

       Plaintiff,

                                Case No. 11-12375

v.                               Hon. Thomas Ludington
                               Mag. Judge Laurie Michelson

ROBERT STERBA, *et al,*

       Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT STERBA AND
PATRICK'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14) AND DEFENDANT
LUDWICK'S MOTION FOR SUMMARY JUDGMENT (Dkt. 17)**

      Plaintiff Philandes Williams, a Michigan Department of Corrections ("MDOC") inmate proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that current and former MDOC Officers Robert Sterba, A. Gonzales, Brian Patrick and Nick Ludwick violated his constitutional rights by retaliating and conspiring to retaliate against him for filing a grievance against Officer Sterba.  The retaliation, according to Plaintiff, was the improper issuance of a major misconduct charge against him for "threatening behavior" which resulted in Plaintiff being placed in segregation, losing privileges and earned disciplinary credits and being denied parole.  All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkt 9.)  Presently before the Court are Defendants Sterba, Patrick and Ludwick's Motions for Summary Judgment (Dkts. 14, 17) to which Plaintiff has responded.  (Dkts. 21, 23.)

      For the following reasons, this Court recommends GRANTING Defendants' Motions for Summary Judgment and DISMISSING Plaintiff's Complaint against them WITH PREJUDICE.

## I. BACKGROUND

Plaintiff Philandes Williams ("Plaintiff") is currently an inmate at the Barga Maximum Correctional Facility in Northern Michigan but at all times relevant to the claims in this case was housed at the St. Louis Correctional Facility in St. Louis, Michigan ("SLF"). (Dkt. 21, Pl. Resp., Ex. D, ¶ 1.) Defendant Sterba was a Resident Unit Officer ("RUO") at SLF. (Dkt. 14, Defs. Mot. Summ. J., Ex. B, ¶ 1.) From November 2008 through December 1, 2009, Defendant Sterba issued at least five (5) Misconduct Reports against Plaintiff for various offenses – ranging from making degrading comments to misusing a door (that charge was not upheld). (Pl. Resp., Ex. F.)

On December 3, 2009, Plaintiff filed an Administrative Grievance against Officer Sterba alleging that two days earlier, on December 1, 2009, Sterba had confronted him in an aggressive manner and challenged him to a fight. (Dkt. 21, Pl. Resp., Ex. D, ¶¶ 3-4.) Plaintiff also sent letters to SLF Warden Nick Ludwick ("Ludwick") and Inspector Brian Patrick ("Patrick") asking for their help in preventing this incident from escalating further. (*Id.* ¶ 5.) The entirety of Plaintiff's grievance (SLF 09-12-1600-17a) provided:

> Officer Sterba made a challenge towards me to fight him. I have no problem with that except for the charges of assault that would be placed on me afterwards for beating him senseless. This officer does not like me and the feeling is mutual. But he is unable to act professional and do his job without going outside [of] bounds. When he moved to H-Block from 3-Block we had a conversation where we both were going to start fresh and leave old incidents behind us. He has reneged on this agreement by taunting me to fight him and by calling me derogatory names. After a challenge to physically fight all that's left is for the actual fight to take place.

(Dkt. 14, Def. Mot., Ex. C.) The grievance was reviewed by the SLF Assistant Resident Unit Supervisor ("ARUS") Ms. Gonzales. (*Id.*) Prior to responding, Gonzales sent the grievance to Sterba on December 7, 2009 requesting that he answer the allegations. (*Id.*, Ex. B, ¶ 3.)

2

That same day, after reviewing the grievance, Sterba filed a Major Misconduct Report against Plaintiff charging that the contents of the grievance constituted "threatening behavior." (*Id.*; *see also id.*, Ex. D.). Sterba described the offense as follows in the Misconduct Report:

> On [December 7, 2009] while answering a grievance (copy attached) submitted and signed by Prisoner Williams #213589, I discovered the following written statements in the grievance: "I have no problem with that except for the charges of assault that would be placed on me afterwards for beating him senseless" and "after a challenge to physically fight, all that's left is for the actual fight to take place." It is clear in the grievance that the prisoner is referring to myself.

(Dkt. 14, Def. Mot., Ex. D.) As a result of this charge, Plaintiff was removed from the housing unit and placed in temporary segregation, pending the outcome of a Major Misconduct Hearing. (*Id.*, Ex. B, ¶ 3.)

The hearing on Plaintiff's misconduct charge was held on December 15, 2009 and, after having an opportunity to respond to the charge, a Michigan Department of Corrections Hearing Officer found Plaintiff guilty of threatening behavior. (*Id.*, Ex. D.) The Hearing Officer provided the following reason for his decision:

> I find that prisoner's words and actions express intent to injure or physically abuse another person. Prisoner pleads not guilty based on his assertion the grievance does not express intent to injure. His assertion is without merit. He writes of beating an officer senseless. The charge is upheld.

(*Id.*) After eight (8) days in segregation Plaintiff was returned to the general population. Based on the Hearing Officer's finding, however, Plaintiff was sanctioned to 30 days loss of privileges and forfeiture of 60 days earned disciplinary credits. (*Id.*; Pl. Resp., Ex. D, ¶ 8.)

After the hearing, Plaintiff claims that he spoke with Inspector Patrick about Sterba's alleged harassment of him. Plaintiff also asserts that he wrote Patrick letters indicating that Sterba filed the

major misconduct charge in retaliation for his earlier grievance against Sterba (which is against prison policy) and asking Patrick to investigate the matter. Plaintiff claims that Patrick did nothing in response to his requests. (Dkt. 21, Pl. Resp., Ex. A, Ex. D, ¶¶ 10-11, 15; Dkt. 1, Compl., Ex. K.)[1]

On December 28, 2009, Plaintiff received a parole denial from the Parole Board that had been signed on December 16, 2009 – the day after he was found guilty of the threatening behavior misconduct charge. (*Id.* at ¶ 13.) The next day, on December 29, 2009, ARUS Gonzales found that Plaintiff's (December 3, 2009) grievance against Sterba could not be resolved at Step I because investigation of the issues revealed that Plaintiff provided no verifiable proof or evidence indicating that staff acted in an unprofessional matter and because Plaintiff had been found guilty of threatening behavior. (Dkt. 14, Defs. Mot., Ex. C.)[2] For the same reasons, Warden Ludwick denied Plaintiff's Step II appeal on February 9, 2010 and his decision which was upheld at Step III in May, 2010. (*Id.*)[3]

Approximately one year later, Plaintiff filed this suit on May 31, 2011 alleging First, Fourteenth and "possibly" Eighth Amendment violations. (*See generally,* Dkt. 1.) The essence of Plaintiff's claims is that Sterba filed the major misconduct charge against him solely in retaliation

---

[1] Inspector Patrick does not dispute that he agreed with Plaintiff that it is against MDOC policy for a guard to file a misconduct charge against a prisoner in retaliation for the prisoner filing a grievance. But in agreeing with this general principal, Patrick was not suggesting that he knew or even believed RUO Sterba violated that policy. (Dkt. 14, Defs. Mot. Summ. J., Ex. A.)

[2] In her response, Gonzales indicates that she interviewed Plaintiff. *Id.* Plaintiff claims this is untrue and that Gonzales was fired as a result of the falsification. (Dkt. 1, Compl., ¶ 9.) This fact issue, however, is not material to Plaintiff's claims.

[3] Plaintiff alleges that he spoke with Warden Ludwick on January 13, 2010, and sent him a confirming letter, regarding the alleged harassment he received from Sterba on December 1, 2009 and the misconduct charge which he claimed was in retaliation for his filing a grievance against Sterba – but as with Inspector Patrick, no action was taken. (*Id.*, ¶ 11.)

for Plaintiff filing a grievance against Sterba and, after Plaintiff made Defendants Patrick and Ludwick aware of the misconduct, those two defendants did nothing to help him.  Plaintiff further claims that as a result of the retaliation he was (1) wrongfully segregated, (2) lost privileges for 30 days as well as 60 days of earned disciplinary credits and (3) was denied parole.  (Compl. ¶ 14.) Plaintiff seeks a declaration that Defendants violated his constitutional rights as well as punitive ($130,000 per defendant) and compensatory ($65,000 per defendant) damages.

## II.    ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must

prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B. Defendants Have Not Raised the Issue of Exhaustion

As a threshold matter, the Court questions whether Plaintiff properly exhausted his administrative remedies prior to filing his complaint.

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19. The exhaustion prerequisite applies to all inmate suits about prison life — regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, a prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules'— rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Although the Supreme Court in *Jones* held that exhaustion is an affirmative defense, it did not categorically preclude the possibility that a complaint may be dismissed on exhaustion grounds on the face of the complaint. The Court suggested that, similar to a motion to dismiss on statute of

6

limitations grounds, if the allegations in the complaint make plain that a plaintiff is not entitled to relief because he failed to exhaust, dismissal pursuant to Rule 12(b)(6) may still be appropriate. *Jones*, 549 U.S. at 215; *see also Feathers v. McFaul*, 274 F. App'x 467, 469 (6th Cir. 2008) ("[I]t remains possible [after *Jones*] for failure to exhaust to be a basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *Doe v. Dublin City School Dist.*, No. 2:09-cv-738, 2010 WL 1434318, at *5 (S.D. Ohio Apr. 8, 2010) ("Plaintiffs err in their reading of *Jones*. The Supreme Court did not hold that a defendant cannot raise a failure to exhaust in a Rule 12(b)(6) motion . . . . *Jones* held only that exhaustion need not be pled and that the burden of demonstrating a failure to exhaust is on a defendant.").

Where the law is more unclear, however, is whether this exhaustion issue may be raised *sua sponte* by the Court. In several unpublished cases, the Sixth Circuit has advised that the district court should not dismiss a prisoner's complaint "*sua sponte* for failure to exhaust, because exhaustion is an affirmative defense that may serve as a basis for dismissal only if raised and proven by the defendants." *United States v. Fitch*, 2011 U.S. App. LEXIS 11243 (6th Cir. 2011) (citing *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. 2007)). But Courts in this district have continued to *sua sponte* dismiss prisoner suits as unexhausted pursuant to 42 U.S.C. § 1997e(a). As one such court explained:

> In *Jones v. Bock* . . . while the Supreme Court held that failure to exhaust is an affirmative defense, the Court also pointed out that prisoner complaints may still be subject to *sua sponte* dismissal for failure to exhaust administrative remedies. *Deruyscher v. Michigan Dep't of Corrections Health Care*, 2007 U.S. Dist. LEXIS 10053, 2007 WL 1452929, *2 (E.D. Mich. 2007); *Ghosh v. McClure*, 2007 U.S. Dist. LEXIS 7368, 2007 WL 400648, at *6 n. 3 (S.D. Tex. 2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion *sua sponte* or dismissing the complaint without service on the defendants where the

7

pleadings and the record confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust his remedies before filing suit."); *Spaulding v. Oakland Co. Jail Medical Staff,* 2007 U.S. Dist. LEXIS 59613, 2007 WL 2336216, *3 (E.D. Mich. 2007) (Where it is clear from the face of the complaint that a plaintiff failed to properly exhaust his administrative remedies in accordance with the applicable grievance policy, the plaintiff's complaint is subject to sua sponte dismissal for failure to state a claim pursuant to *Jones v. Bock*.); *Leary v. A.R. U.S. Conerly,* 2007 U.S. Dist. LEXIS 30132, 2007 WL 1218952 (E.D. Mich. 2007) (lack of exhaustion was obvious from the face of a pleading and requiring the defendant to file a motion to dismiss for failure to exhaust would be a waste of defendants' and the court's time and resources.)). Thus, it is appropriate for this Court to undertake a review of the record to determine if plaintiff complied   with the PLRA's exhaustion requirement before filing suit.

*Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *4 n.3 (E.D. Mich. 2010) *report adopted by* 2010 WL 3123288 (E.D. Mich. Aug 9, 2010).

Here, Plaintiff's Complaint suggests that he exhausted his administrative remedies with respect to his grievance against Sterba for challenging him to a fight.  But, critically, Plaintiff is not suing over that conduct.  His claims are instead based on the alleged retaliation he was subjected to as a result of filing that grievance – i.e., the "threatening behavior" misconduct charge.  Neither Plaintiff's Complaint nor any of the briefing suggest that Plaintiff filed a grievance based on this retaliatory conduct – let alone that he exhausted that grievance.[4]

---

[4]  Rather than directly challenging the guilty finding of the misconduct hearing – which is not grievable, Plaintiff argues that the *filing* of a misconduct report by prison staff based on a prisoner grievance violates prison policy and constitutes unlawful retaliation.  "As distinct from the outcomes of misconduct hearings, the *filing* of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130."  *Reynolds-Bey v. Harris-Spicer*, No. 09-1472, 2011 U.S. App. LEXIS 7660, *20-21 (6th Cir. 2011); *see also Dorch v. Crittendon*, No. 09-13936, 2010 WL 5390175, at *4 (E.D. Mich. Dec. 22, 2010) ("Plaintiff's concerns about the issuance of retaliatory [Misconduct] Reports, while sharing a similar set of facts to the issues addressed in the hearing initiated by those Reports, is not a decision that arose from that hearing nor an issue directly related to the hearing process" and thus was grievable.).

8

Because Plaintiff's failure to exhaust is not plain based solely on the allegations in his Complaint and none of the Defendants have raised the issue in their summary judgment briefs, this Court declines to raise it *sua sponte* and thus, will address the merits of Plaintiff's alleged constitutional violations.

### C.   The Guilty Finding on Plaintiff's Major Misconduct Charge Precludes His Retaliation Claims

#### 1.   *First Amendment Claims*

Plaintiff contends that the Defendants violated his First Amendment rights when Sterba issued – and the other Defendants condoned – a major misconduct charge against Plaintiff in retaliation for Plaintiff filing a grievance against Sterba.  Plaintiff relies on MDOC policy PD 03.02.130, paragraph k, which states, "A grievant shall not be penalized in any way for filing a grievance except as provided in this policy for misusing the grievance process.  Staff shall avoid any action that gives the appearance of reprisal for using the grievance process."  (Dkt. 1, Compl., Ex. H2.)  Defendants contend that Plaintiff cannot satisfy any of the elements of a retaliation claim.  The Court agrees that summary judgment is warranted on the First Amendment claim, but for different reasons than those advanced by the Defendants.

A retaliation claim essentially consists of three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  The law is clear that "an inmate has an

undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000) (citing *Noble v. Schmitt,* 87 F.3d 157, 162 (6th Cir. 1996)). Thus, Plaintiff was engaged in protected conduct when he filed the grievance against Sterba for challenging him to a fight.

On the second element, "the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage." *Siggers-El v. Barlow,* 412 F.3d 693, 701 (6th Cir. 2005). The alleged retaliatory act here, charging an inmate with misconduct, "is an adverse action because serious consequences can flow from erroneous charges," even "when the charges are subsequently determined to be unfounded . . . ." *King v. Zamiara,* 150 Fed. App'x 485, 493-94 (6th Cir. 2005); *see also Thomas v. Eby,* 481 F.3d 434, 441 (6th Cir. 2007) ("Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets."); *Muhammad v. Close*, No. 98-10153, 2011 U.S. Dist. LEXIS 73700, *3 (E.D. Mich. July 8, 2011) (parties agreed that the charge and prosecution for prison misconduct (threatening behavior) satisfied the adverse action element).

To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001). What makes this case somewhat unique is that the contents of the grievance itself forms the basis of the major misconduct charge. Thus, an argument can certainly be made that "but for" this protected conduct, there would not have been a filing of the misconduct charge.

10

The crucial inquiry, however, is whether the motivating factor for the misconduct charge was improper retaliation or proper punishment for violation of prison rules. Where a prisoner is found guilty of the misconduct charge, the Sixth Circuit resolves this inquiry in favor of the defendant. "It is well settled in the Sixth Circuit that a finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jones v. Barnett*, No. 05-73673, 2007 U.S. Dist. LEXIS 10058, at *10 (E.D. Mich., Feb. 14, 2007) (citing *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005)); *see also Burton v. Rowley*, No. 00-114, 2000 U.S. App. LEXIS 28000 (6th Cir. 2000) (granting summary judgment on plaintiff's First Amendment claim that misconduct charges were filed against him in retaliation for grievances he submitted where he was found guilty of the charges); *Brown v. Caruso*, No: 07-11804, 2008 U.S. Dist. LEXIS 15460, at *6-7 (E.D. Mich. Feb. 29, 2008) ("A number of cases hold that Defendant can satisfy its burden and prevail on a summary judgment motion by proving the misconduct charge was resolved against the Plaintiff"); *Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1121, 2011 U.S. Dist. LEXIS 91732, at *7 (S.D. Ohio July 18, 2011) *report adopted by* 2011 U.S. Dist. LEXIS 91782 (S.D. Ohio Aug. 17, 2011) ("Because plaintiff was in fact guilty of the disciplinary charges against him, the consequent increase in his security status and transfer . . . cannot form the basis of a successful claim of retaliation in contravention of his rights under the First Amendment."). There is no dispute that Plaintiff was found guilty of and punished for threatening behavior based upon the statements in his grievance. Stated differently, Sterba's motivation to issue a misconduct charge could very reasonably have been based upon the Plaintiff's behavior and not a desire to retaliate against him. Thus, the Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

  2.  *Eighth and Fourteenth Amendment Claims*

Neither Plaintiff's Complaint nor the parties' summary judgment briefs elaborate on Plaintiff's claims of Eighth and Fourteenth Amendment violations.  In one of his opposition briefs, Plaintiff states that the defendants "violated Plaintiffs First, Eighth and Fourteenth Amendment rights under the United States Constitution.  These violations occurred through retaliation for the exercise of a First Amendment right and the deliberate indifference to the knowledge of the violation of Plaintiff's Constitutional right."  (Dkt. 23, Pl. Resp. Br., ECF 7.)

Procedural Due Process claims are examined in two distinct stages.  *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right [does a court] continue to consider whether the deprivation of that interest contravened notions of due process."  *Id.*  Although the Due Process Clause provides procedural safeguards where there is a protected liberty or property right, the Constitution does not create such property interests.  *Id.*  (citing *Cleveland v. Bd. of Educ. of Loudermill*, 470 U.S. 532, 538 (1985)).  "Instead, they are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court found that a prisoner has a protected liberty interest in good-time credits:

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that

12

the state-created right is not arbitrarily abrogated.

*Id.* at 557.

However, since Plaintiff is incarcerated for offenses committed after April 1, 1987, Plaintiff does not qualify for good time credits under Michigan law but instead may earn disciplinary credits or disciplinary time. *Offender Tracking Information System*, http://www.state.mi.us/OTIS2 (last checked August 23, 2011); Mich. Comp. Laws §§ 800.33(1), (3), 800.34(5); *see also LaFountain v. Harry*, No. 1:10-cv-943, 2011 WL 976461, at *6 (W.D. Mich. Mar. 16, 2011). In *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), the Sixth Circuit held that the disciplinary credit system was not a good-time credit program, because it did not necessarily affect the length of a prisoner's sentence. Accordingly, Plaintiff was not deprived of the type of liberty interest at issue in *Wolff*. *See Nali v. Michigan Dept. of Corrections*, No. 2:10-cv-29, 2011 WL 1598990, at *4-5, (W.D. Mich. Apr. 27, 2011) (holding that "[u]nless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.").

In addition, Plaintiff's misconduct conviction did not result in a "significant, atypical deprivation." *Id.* at *5 ("Even in the absence of a protectible liberty interest in disciplinary credits, an [MDOC] prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation."). Here, in addition to the loss of earned disciplinary credits, Plaintiff was given 30 days of lost privileges. (Dkt. 14, Defs. Mot. Summ. J., Ex. D.) Courts have found that similar punishments do not constitute significant, atypical deprivations. *Hall v. Fuqua*, No. 10-CV-13350, 2010 WL 3768345, at *2 (E.D. Mich. Sept. 21, 2010) ("Plaintiff's claims are frivolous and fail to state a claim because his detention in segregation and loss of privileges for thirty days were not 'atypical and significant hardship[s] on [him] in relation to the ordinary

13

incidents of prison life.'" (quoting *Sandin v. Connor*, 515 U.S. 472 (1995))).

Finally, as to Plaintiff's argument that the (improper) misconduct report caused him to be denied parole, the Sixth Circuit recently found that "Michigan still has not created a liberty interest in parole." *Crump v. Lafler*, No. 09-1073, 2011 U.S. App. LEXIS 19253, *31-32 (6th Cir. Sept. 20, 2011).

Accordingly, the Court finds that on the undisputed facts, Defendants are entitled to summary judgment on Plaintiff's due process claims.[5]

### D.    Defendants Ludwick and Patrick are Entitled to Summary Judgment Because They Did Not Violate Plaintiff's Constitutional Rights

It is clear from Plaintiff's Complaint and summary judgment response briefs that his claims against Defendants Patrick and Ludwick are based on inaction and not active misconduct.  There is no dispute that Officer Sterba issued the misconduct charge on his own.  (*See* Dkt. 21, Pl. Resp. at ECF 9.)  Plaintiff had discussions with – and wrote letters to – Warden Ludwick and Inspector Patrick about this incident and takes issue with their failure to take corrective action.  But their inaction does not rise to the level of a constitutional violation.

The law is well established that liability under Section 1983 must be based on more than merely the right to control employees.  *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).  A claimed constitutional violation must be based upon active unconstitutional behavior and cannot be based on a mere failure to act.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  This means that a party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized,

---

[5] Plaintiff has not developed or articulated any Eighth Amendment claim beyond the retaliation issue already addressed and the Court will not do so for him.

approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See id.* Thus, supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act — this holds even if the omission is the "failure [to] remedy the ongoing effects of a constitutional violation." *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009).

There are no facts establishing that Defendants Ludwick and Patrick were personally involved in the activity which forms the basis of Plaintiff's claim: the allegedly false and retaliatory misconduct charge filed by Sterba on December 7, 2009. The only roles that these Defendants had involved the denial of an administrative grievance and/or the failure to act. Plaintiff tries to create "active" conduct by claiming these Defendants participated in what he calls the "Best Kept Secret Doctrine." But Plaintiff provides no facts to support the existence of such a prevalent conspiracy and, more importantly, his own explanation of the doctrine suggests that it involves inaction: "a policy/custom among staff members to look the other way when co-workers break rules and protect them with a shield of silence and indifference." (Dkt 1, Compl., ¶ 1; Dkt. 23, Pl. Resp. Br. at ECF 9.) That Plaintiff's true claim against Patrick is one of failure to act is made clear in his response brief:

> Plaintiff asks the Court to deny Brian Patrick's Motion for Summary Judgment because as Inspector of St. Louis Correctional Facility he failed to conduct [an] investigation of the violations brought to his attention by Plaintiff on December 21, 2009. Nor did Brian Patrick alert his Supervisor Warden Ludwick about the violation brought to his attention and request an official investigation. And for over five and a half months, Brian Patrick made absolutely no effort to remedy the violations brought to his attention or seek further information from Plaintiff that would allow him to remedy these violations. He stood idly by.

(Dkt. 21, Pl. Resp. Br. at ECF 11-12). Plaintiff's explanation as to Warden Ludwick is similar.

15

(Dkt. 23, Pl. Resp. Br. at ECF 10-12) (describing Ludwicks' failure to take action "to remedy the violation brought to his attention.")

Therefore, these Defendants cannot be liable under § 1983. *See Luttrell*, 199 F.3d at 300 (finding that supervisory defendants' failure to remedy the alleged retaliatory behavior was not actionable under § 1983); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that [the MDOC director] failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."). Accordingly, this Court concludes that Defendants Ludwick, Patrick and Gonzales are entitled to summary judgment for lack of personal involvement.[6]

## III.    CONCLUSION

For all the reasons set forth above, this Court RECOMMENDS that Defendants' Motions for Summary Judgment be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE as to Defendants Sterba, Patrick and Ludwick.

## IV.    FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections,

---

[6] As a result of the reasons discussed, the Court does not find it necessary to address Defendants' immunity arguments.

16

but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).


Date: October 7, 2011                              s/Laurie J. Michelson
                                                   Laurie J. Michelson
                                                   United States Magistrate Judge



CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 7, 2011.


                        s/Jane Johnson
                        Deputy Clerk


17